### COTTON v. COOPER.

(Court of Civil Appeals of Texas. San Antonio. Oct. 22, 1913. On Motion for Rehearing, Nov. 26, 1913.)

1. MASTER AND SERVANT (§ 341*)—MALICIOUS PROCUREMENT OF DISCHARGE—PETITION—SUFFICIENCY.

Where a petition alleged that defendants, falsely claiming that plaintiff was indebted to them, filed with his employer copies of instruments purporting to be assignments of his wages, that his employer had in force a custom or rule that any employé known to have given such an assignment should at once be discharged, that defendants were aware of such rule and aware that plaintiff was not indebted to them, but that they nevertheless wrongfully, willfully, and maliciously and with wanton disregard of the rights of plaintiff and for the purpose of procuring his discharge filed copies of such assignments with notice thereof with the employer, and that because thereof plaintiff was discharged and his wages withheld, it was not necessary for it to allege that the employer was put in fear or coerced to act without its consent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1286; Dec. Dig. § 341.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2. MASTER AND SERVANT (§ 341*)—MALICIOUS PROCUREMENT OF DISCHARGE—PETITION—SUFFICIENCY.

Such petition was sufficient to sustain a recovery both for actual and exemplary damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1286; Dec. Dig. § 341.*]

3. APPEAL AND ERROR (§ 750*)—ASSIGNMENTS OF ERROR—SCOPE AND EFFECT OF ASSIGNMENT.

An assignment of error that there is no evidence to support the verdict or upon which a charge can be predicated raises only the question whether there is any evidence upon which the verdict or charge might be based.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. § 750.*]

4. MASTER AND SERVANT (§ 341*)—MALICIOUS PROCUREMENT OF DISCHARGE—INSTRUCTIONS—"MALICE"—"MALICIOUSLY."

In an action for procuring an employé's discharge by filing purported assignments of his wages with his employer with knowledge that the employer had a rule that employés assigning their wages should be discharged, the court charged that "malice" did not mean personal spite or ill will, that an allegation that an act was "maliciously" done did not mean that it was done for that reason or in such spirit, but meant an unlawful act done in reckless disregard of the rights of another and in a spirit of indifference as to whether such other party was injured or not, that exemplary damages could only be awarded where actual damages were found, that in addition to finding actual damages it must be shown by a preponderance of the evidence that the defendant filed or caused such assignment to be filed, knowing that plaintiff had discharged the obligation due defendant with interest, or that it was filed with his knowledge and approval, or in pursuance of directions given by him to his agents as to how they should deal with plaintiff if he did not meet his obligations, which he had reason to believe would be followed, and that he knew or had reason to believe that plaintiff's discharge would follow such filing, and that he gave such directions in such spirit and with such motive as would make the filing malicious as that term had been defined, that he could not be held responsible in exemplary damages for the action of his agent unless he was so connected with or responsible for such action as to make his action, in connection therewith, malicious, and that if his agent filed the assignment without his knowledge or direction and not in pursuance of his directions as to how plaintiff should be dealt with, given in such spirit and with such purpose as to make the act malicious, to find for defendant on the claim of exemplary damages. *Held,* that the charge as a whole was a clear and correct presentation of the law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1286; Dec. Dig. § 341.*

For other definitions, see Words and Phrases, vol. 5, pp. 4298–4304; vol. 8, pp. 7712, 7713; vol. 5, pp. 4311–4313; vol. 8, p. 7714.]

5. MASTER AND SERVANT (§ 341*)—MALICIOUS PROCUREMENT OF DISCHARGE—SUFFICIENCY OF EVIDENCE.

In an action for maliciously procuring an employé's discharge by filing purported assignments of his wages with his employer which had a rule or custom that employés assigning their wages should be discharged, evidence *held* to support a jury finding that defendant knew and approved of such filing by his agent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1286; Dec. Dig. § 341.*]

6. EVIDENCE (§ 595*)—WEIGHT AND SUFFICIENCY—INFERENCES.

Direct evidence is not required by law, and juries may indulge all reasonable inference from the facts shown by the evidence, or which unbiased and rational minds can properly deduce from the facts proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2444, 2445; Dec. Dig. § 595.*]

7. MASTER AND SERVANT (§ 341*)—MALICIOUS PROCUREMENT OF DISCHARGE—QUESTIONS FOR JURY.

In an action for maliciously procuring an employé's discharge, where the evidence sharply presented the issue of whether the proximate cause of the discharge was the employé's execution of an assignment of his wages, or the assignee's wrongful act in giving the employer notice thereof after the loan secured thereby had been paid, the court did not err in submitting such issue to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1286; Dec. Dig. § 341.*]

8. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—WITHDRAWAL OF EVIDENCE.

In an action for maliciously procuring an employé's discharge by filing assignments of his wages with his employer which had a rule that employés assigning their wages should be discharged, it appeared that plaintiff had sued defendant in justice's court to recover a sum usuriously collected on the loan secured by such assignment and had recovered a judgment from which defendant had appealed to the county court. *Held* that, while the appeal annulled the judgment of the justice court, the withdrawal of such evidence from the jury could not have prejudiced plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

On Motion for Rehearing.

9. ASSIGNMENTS (§ 11*)—SALES OF PROPERTY—"WAGES."

Wages earned under an existing or known and identified employment are property subject to sale or assignment as other property, if the transaction is in good faith and is intended to be, and is in fact, a sale and not a usurious loan under the guise of a sale.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 19–23; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 8, pp. 7369–7373, 7831.]

10. USURY (§ 119*)—NATURE OF TRANSACTION—QUESTIONS FOR JURY.

Whether a contract apparently innocent upon its face, but which is questioned by the pleading and evidence, is usurious, is a question for the jury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 343–357; Dec. Dig. § 119.*]

11. APPEAL AND ERROR (§ 917*)—RESERVATION OF GROUNDS OF REVIEW—WAIVER OF ERROR.

Where the record does not show that demurrers or exceptions to the petition were ever presented to or ruled upon by the trial court, they will be presumed on appeal to have been waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3706–3709; Dec. Dig. § 917.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Will Cooper against Almon Cotton and another. From a judgment for plaintiff, the defendant named appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

J. V. Meek, of Houston, for appellant. K. C. Barkley, John E. Green, Jr., and Ashley N. Denton, all of Houston, for appellee.

TALIAFERRO, J. This is the suit of Will Cooper against Almon Cotton and G. E. Cotton to recover actual damages in the sum of $700, alleged to have been suffered by appellee by reason of the wrongful, fraudulent, and malicious conduct of the Cottons and their agents, and for $5,000 punitive damages. Appellee alleged:' That the defendants, falsely claimed that he was indebted to them in the sum of $35, filed with the Houston & Texas Central Railway Company, his employer, copies of two written instruments, purporting to be assignments made by the plaintiff of portions of his salary or wages to Almon Cotton. That at the time the said assignments were filed by the defendants the said railway company had in force a custom or rule, to the effect that any employé known to have given an assignment of any part of his salary or wages should at once be discharged from its service. That although the defendants were aware of such rule at the time, and were also aware that at such time he was not indebted to them in any sum, that they nevertheless wrongfully, willfully, and maliciously, and with wanton disregard of the rights of the plaintiff, and for the purpose of procuring his discharge, filed copies of said assignments together with notice thereof with the said railway company, and that because of the acts of defendants complained of he was discharged by the said railway company from their service and his wages then due were withheld from him. Trial in the district court before a jury resulted in a verdict and judgment for plaintiff against Almon Cotton for $400 actual damages and $3,500 exemplary damages.

It is necessary, for a comprehension of the case, to recite the facts which led up to this suit and to reveal the devious and disgusting details of the methods used by those engaged in the business of extracting usury from the ignorant and helpless; but only such facts as may be necessary will be discussed.

Almon Cotton is father of G. E. Cotton. G. E. Cotton is 28 years old, and appellants' evidence impresses upon us that he is married and has four children. Almon Cotton owns and operates what he calls "loan offices" in many of the Southern states, in Louisiana, Mississippi, Alabama, Florida, Arkansas, and Texas, apparently only where ignorant negro labor is abundant. In some cities he conducted several of these agencies or loan offices, always under high-sounding names, such as the "Dixie Loan Company," or some name concealing his own identity and calculated to give to the public the impression of a corporation. In Houston, Tex., he operated the Texas Loan Company, the Empire Loan Company, the New York Loan Company, and the Eagle Loan Company. His business was to loan money on chattels and

to "buy" salaries or wages. And this was his method: His own office, called "Central Office," was in one of the large office buildings of the city of Houston. His various loan companies were scattered about town. In general charge of the loan offices he had one L. H. Joyner, who was his general agent and manager, vested with full authority to act at all times. He also had "outside men" whose duty it was, among others, to advise the needy and helpless that they could always get money from one of Cotton's institutions. The interest charged upon loans seemed uniformly to be 20 per cent. per month to whites and 30 per cent. per month to negroes. Each office had positive orders not to make a "loan" upon salaries or wages, but, instead, to "buy" salaries and wages or any such part thereof as the customer should desire to sell and to take an assignment of such an amount thereof as should be "bought" together with power of attorney to Almon Cotton to collect from the borrower's employer. The advances were made in this manner: The borrower executed his assignment and power of attorney, we will say, for $19.50, and was thereupon given $15 in cash. At the end of the month he was "permitted" to collect his own salary and bring in the portion which he had pledged to the loan office. If he desired to retain the money he had borrowed, he did not pay the 30 per cent. interest and renew the obligation. Instead, he went through the formality of paying $19.50 in cash. He then executed a new obligation and assignment and received back $15 of the money paid by him. An extract from a page of the tabulation of accounts, made by the general manager for use in this suit, is as follows:

| Received. | Paid Back. | Difference. |
|---|---|---|
| 12—16—08....$10.00 | 1—15—09....$13.00 | $3.00 |
| 2—15—09.... 15.00 | 2—16—09.... 19.50 | 4.50 |
| 2—16—09.... 15.00 | 3—16—09.... 19.50 | 4.50 |
| 3—16—09.... 15.00 | 4—15—09.... 19.50 | 4.50 |

Appellee Cooper, in December, 1909, negotiated with appellants' office, known as the Texas Loan Company, what he thought was a loan of $10 on his salary. The contract he signed was for $13, which, instead of being in form of a loan, was written so that it appeared that he had "sold" that portion of his salary to accrue the succeeding month and also made a power of attorney for the collection of the amount by Cotton. Cooper was a negro brakeman or yardman in the service of the Houston & Texas Central Railway Company, earning about $115 per month. He could not read or write, and the paper which he signed was never read to him. Monthly thereafter, with perhaps a few exceptions, he renewed this loan in the manner above described, up to the time of beginning litigation with appellant. The amount was increased or was made less in accordance with his needs; it appearing that at least once he was entirely out of debt to Cotton. He also had some dealings with another of Cotton's loan

offices. The method of doing business was always the same and the rate of interest was always the same. In August of 1911, litigation was begun between appellee and appellant in the courts of Harris county involving the transactions above mentioned. On January 2, 1912, Almon Cotton transferred all his loan business in Texas to G. E. Cotton, his son. The terms of that assignment, briefly stated, were: The consideration was $300,000 all on credit. G. E. Cotton executed his note for that sum to Almon Cotton, due on or before two years after date, and bearing 8 per cent. interest. In case the note should not be paid at maturity, G. E. Cotton agreed to convey the business to any one named by Almon Cotton and at the price fixed by him. And it was also agreed that all the moneys collected by G. E. Cotton, whether principal or interest, except necessary operating expenses and a salary of $100 per month to be retained by him for his services, should be "turned over to Almon Cotton or placed in the Commercial National Bank of Houston, Tex., to his credit." He agreed to apply such money first to payment of interest and next to discharge of the principal. Almon Cotton was a man of large means, while G. E. Cotton was then insolvent and wholly execution proof. No effort was made to show that the business, purported to have been sold to G. E. Cotton, was worth $300,000 or any other sum. At this time the litigation filed by Cooper against Almon Cotton was pending. On January 8, 1912, L. H. Joyner, who claimed he was acting under the advice of J. V. Meek, attorney for Almon Cotton, wrote upon the back of the two salary assignments referred to an indorsement, "Without recourse," to G. E. Cotton, which was then signed Almon Cotton. Joyner then filed copies of said assignments with the Houston & Texas Central Railway Company accompanied by a letter asserting that appellee was then indebted to G. E. Cotton, assignee of Almon Cotton, in the sum of $35 upon those assignments. The railway company at once discharged Cooper and retained funds due to him in the sum of $99.60 to satisfy the appellants' assignments. Further necessary facts will be stated in the opinion.

[1] By his first assignment of error appellant contends that the court erred in not sustaining his general demurrer to appellee's second amended original petition upon the ground that the petition nowhere alleges "that the defendant acted maliciously and without justifiable cause, nor that the means adopted by the defendant were false statements or threats, or that he put in fear the plaintiff's employer so that his acts in discharging plaintiff were not voluntary."

There are three propositions presented under this assignment, all of which may state very correct propositions of law in themselves, but none of which in any sense are applicable to the law or facts in this case.

In the main part this assignment of error is too abstract to be considered. In stating a cause of action against appellant it was not in any manner necessary that the plaintiff should allege that his employer was put in fear or coerced to act without its consent. The plaintiff did allege in the most positive terms that the acts of appellant were malicious, wanton, unjustified, and that all his statements were false and known by him to be false. Stronger language could hardly be used than that employed by appellee in his allegation of appellant's willful, deliberate, wanton, and malicious effort to obtain his discharge from employment because he refused to pay a debt which he alleged had been long since paid.

The first assignment of error is overruled, and so also are the second, third, fourth, fifth, and sixth, all of which question the sufficiency of the petition against general demurrer. The petition is not subject to any of the objections urged in these assignments.

[2] The seventh assignment of error is overruled. It questions the sufficiency of the petition by what is called a special exception, but which in fact is a general demurrer. It contends that no facts are alleged sufficient to sustain a recovery either for actual or exemplary damages. We consider the allegations upon both these matters amply sufficient. The ninth and tenth assignments of error urge the same objection to the petition and for like reason are overruled.

[3-5] In his second proposition under his eleventh assignment of error appellant contends that the court erred in his charge submitted upon the issue of malice, upon the ground, as he asserts, that there is "not a scintilla of evidence that the defendant Almon Cotton knew that the power of attorney had been filed or notice thereof given to appellee's employer." Under an assignment of error which asserts that there is no evidence to support the verdict or upon which a charge of the court can be predicated, this court is confined to the determination of the one question of whether there was any evidence upon which the verdict might have been based or the charge given. Railway Co. v. Raney, 86 Tex. 363, 25 S. W. 11. The charge complained of was as follows:

"Malice, as used in law and in this charge, does not mean personal spite or ill will, and the allegation that an act was 'maliciously' done does not mean that it was done for that reason, or in such spirit, but it means an unlawful act done in reckless disregard of the rights of another and in a spirit of indifference as to whether such other party is injured or not. When an act is done in that spirit and with such malice, it is said in law to be done maliciously, or upon legal 'malice.'

"Concerning the claim for exemplary damages, you are instructed that such damages can only be awarded where actual damages

are found, and, in addition to finding actual damages, it must be shown by a preponderance of the evidence that defendant Almon Cotton filed or caused to be filed the assignment at a time when he knew the plaintiff had paid enough to discharge the obligation due him (defendant) with interest at 10 per cent. per annum, or that the same was filed with his knowledge and approval, or that it was filed in pursuance of directions given by him, to his agents, as to how they should deal with plaintiff if he did not meet his obligations, which he had reason to believe would be followed, and that he knew, or had reason to believe, that plaintiff's discharge would follow such filing, and that defendant Almon Cotton gave such directions in such spirit and with such motive as you are instructed in paragraph 3 would make the filing 'malicious' on his part, as that term is defined in paragraph 3.

"The defendant cannot be held responsible in exemplary damages for the action of his agent unless the proof shows that he was so connected with or so responsible for such action as to make his action in connection therewith 'malicious,' as that term has been defined in paragraph 3.

"If defendant's agent filed the assignment without his knowledge or direction, and not in pursuance of the directions of defendant, as to how the plaintiff should be dealt with, given in such spirit and such purpose as to make the act malicious, as that term has been defined, then you will find against plaintiff and for defendant on the claim of exemplary damages."

Only the first paragraph of the above is contained in appellant's eleventh assignment, but a proper comprehension of the point cannot be had without showing the court's whole charge upon the question. As a whole, it is a clear and correct presentation of the law, and it only remains to determine whether there was evidence to justify the charge and to support the verdict of the jury upon the issue.

[6] Direct evidence is not required by law, and juries are allowed to indulge all reasonable inference from the facts revealed to them by the evidence, or which unbiased and rational minds can properly deduce from the facts adduced before them. Schumick v. Noll, 72 Tex. 1, 8 S. W. 83; Stookbury v. Swan, 85 Tex. 563, 22 S. W. 963; Farley v. Railway Co., 34 Tex. Civ. App. 81, 77 S. W. 1040; El Paso Foundry Co. v. De Guereque, 46 Tex. Civ. App. 86, 101 S. W. 814; 1 Greenleaf on Ev. (15th Ed.) § 48. If this were not so, it would often be impossible to reach the rational conclusions that are inevitable deductions from proven facts. The very nature of the proof here sought belongs in that class. Almon Cotton was sole owner of all the business and property of all those innumerable loan companies. Their every act was his act. It matters not whether he acted through Joyner, his factotum, or whether he acted alone; no other man's approval or consent was sought or required. He knew that Will Cooper had an account running through his books; he knew he held Cooper's powers of attorney; he knew the amount and the interest and the maturity and the effect of all these things. It matters not whether he had a personal knowledge of all these details—the knowledge was in possession of his agent, who, he himself admits, had full power and authority to act for him. The two assignments were presented to him on January 8, 1912, for his indorsement. They were on the same day forwarded, with a letter signed by Joyner, his general agent, to the railway company. On the 6th of January a judgment had been obtained against him in the courts of the county involving the validity of these very assignments and declaring them void. He says he had no knowledge as to why these papers were presented to him for indorsement or what Joyner and Meek intended to do with them, and that he did not know of their intention to file the papers with the railway company. If his testimony upon this matter was false, there was no possible way for appellee to impeach him. No man could look into his mind and discover the truth against his will. No other source of evidence could be found from which facts could be had to discover its falsity, if it was false. Therefore the law permits the court, or the jury trying the case, to weigh his evidence with the surrounding circumstances and the facts, otherwise in evidence, and decide whether or not he is to be believed. Under a proper charge in this case the jury found that Almon Cotton did know and approve of the filing of the Cooper assignments, and we believe the evidence amply supports the verdict. The first proposition under this assignment is not germane, and the assignment is overruled.

What has been said concerning the eleventh assignment of error also disposes of assignments Nos. 12, 13, 14, 15, 16, 20, 21, 22, 23, and 30. Each of them submits propositions contending that there is not "a scintilla" of evidence to justify the charge of the court or to sustain the verdict of the jury. We have with great care examined the record and studied the evidence, and have concluded that the evidence is sufficient in each instance, and the said assignments are overruled.

[7] Appellant's eighteenth and nineteenth assignments of error complain that the court submitted to the jury the issue of proximate cause of appellee's discharge from his position. His proposition under these assignments is that, "where the evidence is undisputed on any question and shows what caused an act, it is improper for the court to submit to the jury the question of proximate cause." The proposition states a correct rule of law, but it is not supported by the facts in this cause. The issue of proximate cause was sharply presented by the facts

proven. Appellant contended that the evidence shows that appellee was discharged by his employer because he executed an assignment, while appellee's contention was that his discharge was the proximate result of appellant's wrongful act in giving his employer notice of the assignment. The jury decided the issue in favor of appellee, and, without discussing the matter further, we will say that we quite agree with the view taken by the jury. The eighteenth and nineteenth assignments are overruled. What has been said in reference to the eighteenth and nineteenth assignments also disposes of assignments Nos. 26, 27, 28, and 29.

[8] The twenty-fourth assignment of error complains because the court instructed the jury "not to consider the judgment rendered in the justice's court as testimony in this cause, as it has no legal bearing," etc. If this was error, we fail to see how it could have damaged the appellant. The evidence was that appellee had filed suit in the justice's court against appellant to recover the sum of $66, alleged to have been usuriously collected by appellant from him upon a loan of $35; the very debt involved in this suit. The justice of the peace gave appellee a judgment for the amount sued for. Appellant took an appeal to the county court where the case was pending at the date of this trial. The contention is that appellant "was entitled to have the judgment remain before the jury for it to consider, to show that as a matter of fact there was no judgment in existence." It is true that our courts have held that, on appeal from the justice to the county court, the trial there being de novo, has the effect of annulling the judgment in the justice's court. Bender v. Lockett, 64 Tex. 566; Moore v. Jordan, 65 Tex. 395; Railway v. Mosty, 8 Tex. Civ. App. 330, 27 S. W. 1057; Harter v. Curry, 101 Tex. 187, 105 S. W. 988. But those were cases in which the status of the judgment was involved, while this is merely a matter of evidence. If the jury had been permitted to take into consideration the fact that a court of justice had rendered a judgment declaring appellee was not indebted to appellant and canceling the very instruments in question here, it is hard to see how it could have resulted to the benefit of the appellant. The record does not reveal at whose instance this evidence was withdrawn from the jury, but it is certain that its withdrawal could not have resulted in injury to the appellant, and the twenty-fourth assignment of error is overruled.

Appellant's twenty-fifth assignment of error complains of the amount of the verdict, both for actual and exemplary damages, and earnestly insists that they are excessive. We need only say that there is evidence to support the verdict, and the amount awarded, under the facts of this case, is far from shocking to the conscience of this court.

The judgment of the lower court is affirmed.

### On Motion for Rehearing.

[9] In his motion for rehearing appellant presents issues, which he contends are in this case, in a series of six questions. Such of them as may not seem to be fully discussed in the opinion of the court we will answer in their order:

First. "Can a man assign his wages to be due at a future date from an employer for whom he is working at the time of the assignment? If so, can the purchaser pay for the wages assigned a less sum than the amount assigned, so that when the wages are paid the discount thereon will more than equal 10 per cent. on the amount advanced?"

To this we answer that it has been held to be lawful to assign all or any part of one's salary or wages "earned under an existing or known and identified employment." Wages are declared to be property, subject to sale or assignment as other property. McKneely v. Armstrong, 162 S. W. ——, and cases cited; Owens v. State, 53 Tex. Cr. R. 105, 112 S. W. 1075, 126 Am. St. Rep. 772. And it may reasonably follow that the consideration paid will not be a material inquiry by the courts so long as the transaction is in good faith, intended to be and is in fact a sale of such property. But we have held and now reaffirm that the pleadings and evidence in this case raise the issue of the good faith of appellant in the transaction. The jury found under the evidence that the transaction was in fact a loan under the guise of a sale and in effect that appellant's act was an effort to avoid and defeat the usury law. The intent of the laws against usury is too often defeated by reason of the narrow space they must occupy between the proper prohibition of acts against public policy and the limitation of the right to free contract.

[10] Whether a contract, apparently innocent upon its face but which is questioned by the pleading and evidence, is usurious, is one for the jury. Peightal v. Cotton States Bldg. Co., 25 Tex. Civ. App. 390, 61 S. W. 428; Lawrence v. Griffen, 30 Tex. 401. The jury in this case found that the transaction between appellant and appellee was a subterfuge to avoid the usury laws, and their finding is well supported by the evidence.

The second question is: "Should the demurrer of the defendant to plaintiff's petition have been sustained?"

[11] This contention is covered by appellant's assignments from 1 to 10, inclusive. We see no reason to change the views announced by us, but another reason requiring these assignments to be overruled exists which was not called to our attention by appellee's brief, nor did we observe it until we began the consideration of this motion; that is, that the record does not show that any

exceptions were taken by appellant to the action of the court in overruling his demurrers and exceptions. In fact, the record does not show that such demurrers or exceptions were ever presented to or ruled upon by the trial court. Where the record does not show that demurrers and exceptions were called to the attention of the trial court, they will be presumed by this court to have been waived. Moore v. Woodson, 44 Tex. Civ. App. 503, 99 S. W. 116; Railway v. Barnett, 12 Tex. Civ. App. 321, 34 S. W. 139; Lemp Brewing Co. v. McDougle, 40 Tex. Civ. App. 583, 90 S. W. 215; Insurance Co. v. Boren, 83 Tex. 97, 18 S. W. 484; Floyd v. Rice, 28 Tex. 341, and cases cited. No fundamental error was presented by the assignments, and they were properly overruled.

The remaining questions, from 3 to 6, inclusive, concern mere issues of fact which were passed upon by the jury. Each assignment of error, in which the matters presented by these questions are covered, contends that there is not a "scintilla" of evidence to support the verdict of the jury.

A re-examination of the record does not alter our belief that the facts are amply sufficient to support the verdict, and the motion for rehearing is overruled.