## EMPLOYEES' LOAN SOC. v. REYNOLDS.
### No. 11101.

Court of Civil Appeals of Texas. Dallas.
Feb. 11, 1933.

Rehearing Denied March 11, 1933.

Sullivan & Wilson and J. Lee Zumwalt, all of Dallas, for appellant.

George Clifton Edwards, of Dallas, for appellee.

JONES, Chief Justice.

Appellee, G. F. Reynolds, filed suit in a district court of Dallas county against appellant, Employees' Loan Society, to recover damages by reason of an alleged libelous letter circulated by appellant concerning appellee. The trial of the case resulted in a judgment in favor of appellee for damages in the sum of $800, and appellant has duly perfected an appeal to this court. The following are the facts:

The Employees' Loan Society is the firm name adopted by the owners, R. M. Dimm and George R. Reese, both of whom are nonresidents of the state of Texas. Their business was operated in the city of Dallas through the means of agents and employees residing in said city, and the suit was instituted against the individual owners doing business under the firm name of Employees' Loan Society. Service was obtained on the nonresident owners by the levy of an attachment on various articles of office furniture. The attached property was replevied by appellant, and a statutory replevin bond given. The attachment lien, as it existed on September 25, 1930, was foreclosed and an order of sale of the attached property directed to be issued. Judgment was also given against R. M. Dimm and G. R. Reynolds, as principals in the replevin bond, and against the United States Fidelity & Guaranty Company, as surety on such bond.

Appellee resided with his family in the city of Dallas, was an employee of the Texas Power & Light Company at $135 per month, and had been so employed for approximately eighteen months. In 1929, appellee's wife suffered from a severe and continued illness, for which reason it became necessary for appellee to borrow from appellant the sum of $40. The loan was arranged on March 21, 1929, under the terms of which appellee contracted to pay appellant the sum of $60 within six months, by semimonthly installments of $5 each, or $10 per month. The money received by appellee on this loan was $40, and the remaining sum of $20 was interest for its use. Two notes were executed as evidence of this contract, one for $40 representing the principal, and the other for $20 representing the interest. Appellee paid and discharged the $40 note within approximately the contract time, and paid $5 on the $20 interest note. He defaulted on the remaining installments, totaling $15, on the interest note. The reason of this default appears to have been because of the heavy expense incident to the continued illness of appellee's wife.

After making frequent and emphatic demands on appellee for the payment of the balance of $15 on the interest note, to which he failed to respond, on September 27, 1929, appellant addressed a letter to appellee's employer, informing such employer that appellant had an account against appellee, which had been past-due for some time, and further that "this account was opened with Mr. Reynolds on March 21st of this year for $60, and he still owes a balance of $15, which we have been unable to collect, and we are asking for your cooperation in the matter." Again, on October 11th, appellant addressed a letter to appellee's employer, reminding such employer that the former letter addressed to it in regard to appellee had not been answered, and requesting an answer.

On October 19, 1929, a duly authorized agent of appellant called upon appellee's employer and had an interview with such employer in the presence of appellee. At this time appellant's agent charged that appellee

was indebted to appellant and displayed the two notes executed by appellee, as evidence of the indebtedness, when appellee's employer asked appellee if he would pay the balance due appellant, and upon appellee's reply that he could not now pay such sum, immediately discharged him from his employment.

Appellant continued this high-powered method to force payment by appellee of the $15, until a few months later, appellee instituted suit against appellant in a justice court of Dallas county for the sum of $10, and for a cancellation of the $20 note, of which the sum of $15 was unpaid. The basis for this suit was the claim that the $20 note represented usurious interest, and that $5 of such usurious interest had been paid, and prayed for the recovery of the statutory penalty of double the amount of usurious interest paid. The judgment of the justice court is in evidence, and its recitals show that appellant confessed the correctness of appellee's claim, paid the $10 into court, and canceled the $20 note, as decreed by the justice court judgment.

Appellee's petition alleges all of these facts, sets out the letter of September 27, 1929, and by the allegations of proper innuendoes clearly presents a cause of action for libel. The petition is very full and lengthy, but it is not deemed necessary to state it more fully. Appellant answered at length, the material part of which is to the effect that the letter of September 27, 1929, and the exhibition of the notes to appellee's employer on October 19th, did not cause the the the discharge of appellee, and hence did not cause or contribute to cause the financial damages suffered by appellee by reason of his discharge. There is no claim made by appellant that the alleged balance of $15 was a lawful claim and one that appellant could enforce against appellee. Seemingly, appellant has construed appellee's petition to be one for damages, because of the wrongful discharge of appellee, contributed to by appellant, and not a suit for libel. This is a mistaken construction given to appellee's petition, for it is clearly one to establish a libel, and to recover the damages suffered by appellee because of such alleged libelous act.

The trial court correctly construed appellee's suit to be one based upon libel, and submitted the case on the following special issues:

"No 1. Do you find and believe from a preponderance of the evidence that the sending of the letter of September 27th, 1929, asserting that 'he still owes a balance of $15.00, which we have been unable to collect,' and the displaying of the notes on October 19th, 1929, caused or contributed to cause the discharge of plaintiff, from the employment of the Texas Power & Light Company? Answer: Yes.

"No. 2. Do you find and believe from a preponderance of the evidence that the sending of the letter of September 27th, 1929, assert-

ing that 'he still owes a balance of $15.00, which we have been unable to collect,' and the displaying of the notes on October 19th, 1929, tended to injure the reputation of the plaintiff, G. F. Reynolds and thereby expose him to financial injury or mental suffering? Answer: Yes.

"No. 2a. Do you find and believe from a preponderance of the evidence that the sending of the letter of September 27th, 1929, asserting that 'he still owes a balance of $15.-00, which we have been unable to collect,' and displaying of the notes on October 19th, 1929, tended to impeach his honesty and integrity and reputation? Answer: No.

"No. 3. What sum of money, if any, if paid now, will reasonably compensate the plaintiff, G. F. Reynolds, for the financial injury, if any, and for mental suffering, if any, directly and proximately resulting from the sending of the said letter of September 27th, 1929, asserting that 'he still owes a balance of $15.-00, which we have been unable to collect,' and the displaying of the notes on October 19th, 1929? Answer: $800.00.

"No. 4. Do you find and believe from a preponderance of the evidence that the sending of the letter of September 27th, 1929, asserting that 'G. F. Reynolds still owed a balance of $15.00 which we have been unable to collect' and the displaying of the notes on October 19th, 1929, was done in a reckless disregard of the rights of G. F. Reynolds and in a spirit of indifference as to whether G. F. Reynolds was injured or not? Answer: No."

"No. 6. Do you find and believe from a preponderance of the evidence that the plaintiff, G. F. Reynolds, was discharged by J. E. Van Horn, solely, on account of his unpleasant attitude in the office where he worked? Answer: No.

"No. 7. Do you find and believe from a preponderance of the evidence that the sending of the letter of September 27th, 1929, asserting that 'he still owes a balance of $15.00 which we have been unable to collect,' and the displaying of the notes on October 19th, 1929, was meant and intended by the defendants to cause the Texas Power & Light Company to compel G. Frank Reynolds to pay said alleged debt or be discharged? Answer: No."

The verdict of the jury, given in response to the special issues, is adopted as the findings of this court, each finding being supported by substantial evidence. Article 5430, R. S. 1925, defines "libel" as follows: "A libel is the defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, comtempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby

expose such person to public hatred, ridicule, or financial injury."

Stripped of those matters that have no application to the instant case, the statute reads: "A libel is a defamation expressed in printing or writing, * * * tending to injure the reputation of one who is alive, and thereby expose him to * * * financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, * * * and thereby expose such person to * * * financial injury."

The letter of September 27, 1929, constitutes a direct charge that appellee owed to appellant a debt of $15, which appellant was unable to collect. This charge was re-enforced by appellant's exhibition to appellee's employer of two promissory notes executed by appellee, showing a balance due appellant of $15. At the time of the writing of the letter and the exhibition of the notes, appellant knew that appellee had legally discharged, not only the principal of the indebtedness, but had paid an additional sum of $5, amounting to usurious interest for the use of the principal indebtedness, and that instead of appellee owing a balance of $15, he had a valid claim against appellant for double the amount of such usurious interest.

There is presented, therefore, a case that indisputably shows appellant made to appellee's employer a false accusation that appellee owed it a debt which he would not pay, and undertook to demonstrate such fact by exhibiting to appellee's employer a valid note executed by appellee, in the sum of $40, which had been fully discharged, and an interest note for $20, on which $5 had been paid, knowing that such interest note represented an unlawful and illegal claim. Was the sending of this letter, together with the exhibition of the notes, libelous?

■ Under the undisputed facts of this case, the false claim against appellee, made in writing to appellee's employer, of an indebtedness due appellant from appellee, will constitute a libel under the provisions of article 5430, supra, provided either one or both of the two conditions named in such statute be shown to have resulted: (a) Did the writing tend to injure the reputation of appellee and thereby expose him to financial injury; and (b) did the writing impeach the honesty, integrity, or reputation of appellee, and thereby expose him to financial injury?

The first of these provisions, under which a libel may be committed against a person, was fairly submitted to the jury by special issue No. 2, and the jury returned an affirmative answer thereto. The second provision, under which a libel may be committed against a person, was fairly submitted to the jury by special issue No. 2a, and the jury returned a negative answer thereto. There is no conflict in these answers of the jury, as contended by appellant. The libel statute clearly draws a distinction between that which tends to injure the reputation of a person, and that which impeaches the honesty, integrity, or reputation of a person. The same instrument in writing might do both, or it might only injure the reputation of a person, and yet not go to the extent of his impeachment in the respect named in the statute. Under the findings of the jury, the writing in question had only the latter effect.

■■ It was clearly the province of the jury, under the facts of this case, to determine whether the conduct of appellant, in sending the letter of September 27th, and in exhibiting the notes on October 19th to appellee's employer, tended to injure appellee in his reputation, and thereby to expose him to financial injury. The jury having determined that the conduct of appellant was libelous, appellee, as a matter of law, is entitled to recover from appellant the damages resulting to him from appellant's libelous act. The jury determined, by its answer to special issue No. 1, that, under the evidence, the libelous act of appellant contributed to cause his discharge by his employer. This finding entitled appellee to recover from appellant the damages resulting from his discharge. Texas Furniture Co. v. Meyers (Tex. Civ. App.) 167 S. W. 766; Cotton v. Cooper (Tex. Civ. App.) 160 S. W. 597; Id. (Tex. Com. App.) 209 S. W. 135; Evans v. McKay (Tex. Civ. App.) 212 S. W. 680. The jury assessed the damages at $800, and it is amply sustained by the evidence.

■ Appellant assigns error on the manner in which special issue No. 2 was submitted to the jury, claiming that the submission is duplicitous and leads to speculation or doubt as to the meaning of the verdict on this issue. The finding of the jury in respect thereto is specific and plain. Appellant's criticism of this issue is made to the last clause of such issue, which reads, "tending to injure the reputation of the plaintiff, G. F. Reynolds, and thereby expose him to financial injury, or mental distress." It is claimed that, as the jury was required to answer such issue "yes" or "no," and having returned the answer "yes," it is impossible to determine whether the jury intended to find that appellee was exposed to "financial injury," or intended to find that he was exposed to "mental distress." While the statute only uses the term "financial injury," our courts have held, in effect, that if it exposes him to "mental distress," the act complained of is nevertheless libelous. It is clear that, by the affirmative answer, the jury found that one or both the matters submitted resulted. If either resulted, a libel against appellant was committed. The question here is unlike those cases cited and relied upon by appellant, where the disjunctive submission was on matters of antagonistic effect; that is, if one of the matters submitted existed, the complaining party

would be entitled to recover, while if the other matter submitted existed, there could be no recovery by such party. In this case, the existence of either or both of the matters submitted would entitle appellee to recover. This assignment of error is overruled.

A number of appellant's contentions are clearly based upon the mistaken theory that appellee's suit is for damages resulting for a wrongful procurement of appellee's discharge. This is not appellee's cause of action, but, as we have seen, it is one for damages resulting from a libel. The fact that, by the commission of a libel, appellant contributed to appellee's discharge, is only an incidental fact in appellee's suit, necessary to show that he suffered actual damages because of the libel.

We have carefully examined all of appellant's assignments of error, not herein specifically discussed, and overrule them. We conclude that the case, as made by the pleadings and evidence, has been fairly tried, the disputed issues clearly submitted to the jury, the damages found not excessive, and that this case must be affirmed.

Affirmed.