## H. W. MOORE ET AL. v. W. M. WOODSON ET AL.

### Decided December 18, 1906.

**1.—Preparation of Briefs—Rule 31.**

Where there is no statement from the record subjoined to the assignments of error or the propositions thereunder in the briefs, the Appellate Courts are relieved from the duty of passing on the assignments.

**2.—Demurrer—Waiver.**

Demurrers or exceptions not brought to the attention of the trial court are presumed to have been waived.

**3.—Errors—No Appeal.**

Errors affecting only a defendant who does not appeal will not be considered on appeal by his codefendants.

**4.—Value—Answer of Witness.**

In reply to a question as to what he gave for the certificates of stock in controversy, a witness testified that he "had already stated that he gave $85 per share." An objection that the witness did not answer positively as to the value of the stock was without merit.

**5.—Charge—Assumption of Fact.**

When the evidence as to an issue is undisputed the court may assume it as proven.

**6.—Same—Form of Verdict.**

The practice of giving the jury the form of verdict in the charge is proper.

**7.—Taxing Cost.**

The matter of taxing cost is in the discretion of the court, and abuse of the same must be shown.

**8.—Administration of Estate—Revision by District Court.**

In a suit in the District Court to revise and correct certain orders of the Probate Court in the administration of an estate, it is proper for the District Court, having determined the issues, to certify its decree to the Probate Court for observance.

**9.—Copying Verdict in Judgment—Mistake—Correction.**

The answer of the jury to a special issue was "Yes." By clerical mistake it was copied into the judgment as "No." Held, the attention of the trial court

should have been specifically called to the mistake in the motion for new trial, and a specification in said motion that "the judgment is contrary to the verdict of the jury, and is not supported by nor in accordance with the same," was insufficient.

**10.—Jury of Eleven—Signing Verdict—Illiterate Juror.**

Where, because of the sickness of one of the jurors, the case was tried with only eleven jurors, and it developed that one of the jurors was illiterate, and could not sign his name to the verdict, it was not error for the judge to write the juror's name at the foot of the verdict and the juror to make his mark thereto. The juror having been accepted by the parties, any objection on the ground of illiteracy came too late after verdict.

**11.—Unnecessary Party—Objection.**

An objection that a defendant was not a necessary party or proper party comes too late after trial.

Appeal from the District Court of Houston County. Tried below before Hon. Benj. H. Gardner.

*H. W. Moore* and *Moore & Adams,* for appellants.

*J. M. Madden* and *J. M. Cook,* for appellees.

REESE, ASSOCIATE JUSTICE.—W. M. Woodson and others, heirs of J. J. Woodson, brought this suit in the District Court of Houston County against H. W. Moore and G. W. Woodson, administrators of the estate of J. J. Woodson, to have revised and corrected by the District Court certain orders and proceedings of the Probate Court in the matter of the administration of the estate, to wit, the appraisement and approval by the court of 43 shares of the capital stock of the Mobile and Ohio Railroad Company and an order of sale, and approval of the sale made thereunder of said shares of stock. A. L. Keene, the purchaser of the stock at the sale, is also made a defendant. It was alleged that the shares had been appraised at $375 and sold for $400 at private sale and that the purchaser immediately thereafter sold the same for $85 a share, amounting to $3,655, and that the shares were at once, for this price, transferred to E. L. Russell at Mobile, Alabama, by whom they had been transferred to W. B. Horn of New York. It was alleged that the market value of the stock, at the time of the sale and appraisement, was $85 per share; that the administrators had the same in their hands for two years before having it appraised and sold and were guilty of negligence and want of care and diligence in failing to ascertain the true value of the stock. It was further charged that the sale was ordered upon the representation that it was necessary to pay costs; that this representation was false and was fraudulently made by the administrators, and in pursuance of a common design between them and Keene, the purchaser, to defraud the estate by a sale of the stock for greatly less than its known value.

The stock was sold to A. L. Keene, the son-in-law of G. W. Woodson, one of the administrators, and it is charged in substance that the administrators fraudulently colluded with Keene and delayed having the stock inventoried and sold, in order to allow Keene to ascertain its market value and to arrange a deal for the sale thereof and also in order

to allow him time to negotiate with the heirs of the estate for a purchase of their interest in the balance of the property of the estate, most of which had been partitioned among the heirs. The petition further avers that Keene, previous to the sale of the stock, of whose existence and value he was fully advised, by fraud and false representations that the balance of the property of the estate consisted of some old and out of date claims which were thrown aside by the partitioners of said estate as being either worthless or out of date and, so far as the heirs were concerned, only so much waste paper, procured from some of the heirs for a consideration of $10 a transfer of their interest amounting to one-fifth interest in the property referred to, so drawn as to include said shares of stock of whose existence they had no notice and which had been concealed from them by said Keene, and that Keene also in the same way and by the use of the same means procured from other of said heirs a power of attorney authorizing him to act for and represent them in reference to their interests in said estate upon a contingent fee of one-half of all the property he might recover under the terms of said power of attorney and that Keene is now claiming under said power of attorney one-half of the interest of said heirs in the $400 for which the stock was sold, and under said transfers all of the interest of the heirs executing the same in said sum. The fraudulent scheme of the said Keene to procure said transfer and power of attorney is fully set out in detail in the petition.

A writ of certiorari was prayed for and proper bond therefor executed to bring up the aforesaid proceedings of the Probate Court for revision, with prayer that the proceedings be reviewed and the orders referred to be cancelled and set aside and that Keene be held to have no interest in the $400 for which the stock was sold. There was prayer, in the alternative, that the plaintiff have judgment against defendants for the value of the stock, less the $400, or that the administrators be charged with the amount, or that they and Keene be declared trustees for them of said amount, and that the property of the estate on hand be sold to pay the same and if not sufficient that the administrators be required to pay the balance; that the Probate Court be directed to observe the judgment of the District Court in making partition and distribution of the property of the estate. There was also prayer for general relief.

The defendant Keene answered by general demurrer and numerous special exceptions which need not be further referred to in view of the fact that he does not appeal from the judgment against him and the further fact that it nowhere appears in the record that any of the exceptions, or the general demurrer, were presented to the court or acted upon. Said defendant also made general denial and specially denied in detail all of the allegations of the petition charging him with fraud or improper conduct with regard to the purchase of the stock or the procurement of the transfers and power of attorney.

Defendants Moore and Woodson, administrators, also answered by general demurrer and numerous special exceptions which need not be set out inasmuch as it nowhere appears in the record that either demurrer or exceptions were ever presented to the court or acted upon in any way. Said defendants also made general denial, and specially answering alleged that the certificates of stock referred to were placed by J. J. Woodson

in his lifetime in an old box among old out-of-date bonds and other worthless papers and were not listed by him as any part of the assets of his estate, and that the administrators did not discover them until a short time before they were inventoried. They aver that nothing was done by them covertly, but that they acted openly and in good faith, that the stock was honestly appraised at what was supposed to be its value and that, when ordered to be sold at private sale, they endeavored to get bids for the same from the business men of Crockett, but could get no other bid than that of A. L. Keene of $400. Defendants deny in detail every allegation of want of diligence, fraud on their part, and of collusion with Keene, and show that the sale of the stock was necessary to pay costs of administration.

The case was tried with a jury who were instructed to find, as a result of the undisputed evidence, the following facts:

"First. That the value, to wit, $375, placed by the appraisers on the 43 shares of Mobile & Ohio Railroad stock on August 5, 1902, was greatly below the real and market value at that time.

"Second. That the said 43 shares of railroad stock was sold by G. W. Woodson and H. W. Moore, administrators of the estate of J. J. Woodson, deceased, to A. L. Keene, for the sum of $400; that they made report of said sale to the County Court of Houston County on November 8, 1902, and on November 14, 1902, said report was approved by said County Court. That said $400 was paid by the said A. L. Keene to said administrators on the 8th day of November, 1902; that at the time of said sale, and report and confirmation thereof, and the payment of said money, the $400 was greatly less than the fair market value thereof, and greatly less than the real value of said stock. That at said time the fair market value and the real value of said stock was not less than $80 per share. That about said time said A. L. Keene disposed of said 43 shares of stock at $85 per share, aggregating $3,655, and also realized a dividend on said stock of $43; that the highest value of said stock at the time said sale was consummated was $3,698, less 1-4 of 1 percent as exchange.

"Third. That out of the proceeds of the 43 shares of stock as sold by said A. L. Keene he, the said Keene, paid to G. W. Woodson, one of the administrators, the sum of $500 as a credit on a debt of A. L. Keene to said Woodson in his individual capacity.

"Fourth. That the bill of sale from Mrs. Mollie H. Hassank and J. E. Hassank to A. L. Keene, described in the pleadings and read in evidence, was obtained by said A. L. Keene by fraud and deceit, and for a grossly inadequate price, to wit, the sum of $10.

"Fifth. That the plaintiffs J. Monroe Perkins, Mrs. Mattie P. Winham, M. A. Winham and others executed powers of attorney to A. L. Keene, as described in the pleadings and evidence, but that same was or were obtained by the fraud and deceit of the said Keene, and said Keene has done nothing to entitle him to any interest in the property covered by said powers of attorney."

In addition the jury were directed to answer certain questions submitted to them as special issues in reply to which the jury found in substance and effect that the administrators knew, or by the use of ordinary diligence could have known, before the sale that the stock was

of greater value than $400 and that they did not exercise ordinary diligence before the sale to ascertain its fair market value. The jury also in reply to questions found that there was no collusion between the administrators, or either of them, and A. L. Keene in the purchase of the stock, and that the administrator Woodson was not interested with Keene in the purchase. This last finding was predicated upon a charge in the petition, sustained by the proof, that Keene paid Woodson $500 out of the amount received by him for the stock, such payment being upon an old debt which Keene owed him.

Upon these findings the court adjudged that the administrators were guilty of devastavit, waste and mismanagement of the property of the estate, the amount of such devastavit being fixed at the difference between the $400 for which the stock was sold and the value of the stock at $80 per share, less one quarter of one percent exchange, for which they should be held liable to the estate. It was further adjudged that Keene, by reason of his fraud in procuring the transfers and powers of attorney, had no interest in the $400. The orders of the Probate Court in the matter of approval of the appraisement of the stock and the order of sale and approval thereof were set aside and it was ordered that the decrees be certified to the Probate Court for observance. There was judgment against the defendants individually for costs. From this judgment Moore and Woodson, the administrators, appeal.

The first five assignments of error are addressed to alleged error of the court in not sustaining the general demurrer and certain special exceptions to plaintiffs' petition. The manner in which these assignments are presented in the brief would relieve us of the duty of passing upon them. There is no statement from the record subjoined to the assignments or the propositions thereunder, of matters in the record pertaining thereto, nor reference to the pages of the record where the same can be found. (Rule 31; Bailey v. Chapman, 38 S. W. Rep., 544.) No reference is made to any order or judgment of the court with regard to the demurrer or any of the exceptions, and we have searched the record in vain for anything to show that they were called to the attention of the court or passed upon in any way. Where the record does not show that demurrers and exceptions were called to the attention of the trial court and passed upon, they will be considered as waived. (Chambers v. Ker, 6 Texas Civ. App., 376; San Antonio & A. P. Ry. Co. v. Barnett, 34 S. W. Rep., 139.) No fundamental error is presented by the assignments. With regard to the special exception for misjoinder of A. L. Keene, this exception is not embraced in the answer of the other two defendants. It is embraced in the answer of Keene, but is not shown to have been acted upon, and in addition, Keene does not appeal from the judgment. (Menger v. Ward, 87 Texas, 622.)

The witness Russell, in reply to a question as to what he gave for the stock, testified that "I have stated that I gave Mr. Keene $85 per share for the 43 shares." The admission of this evidence is made the basis of the sixth assignment of error. By considering the proposition thereunder as a statement from the record, and referring to the pages of the record set out in the assignment itself, we have been able to dig out of the record what purports to be an objection to this evidence and an exception to the action of the court in overruling the same. The whole

objection, so far as we are able to understand it, is that the witness does not answer positively as to the value of the stock, but only says that he had "stated that it was worth $85 per share," which he had done elsewhere in his answers. The objection was without merit.

Other objections to the ruling of the court in the admission of testimony as presented in the seventh, eighth and ninth assignments will not be considered. No regard is paid to the rules with reference to the preparation of briefs. There are no statements from the record by which we are enabled to determine, from the record, what was the action of the court thus complained of and attempted to be presented for consideration by this court.

The tenth and eleventh assignments of error assail the charge of the court in assuming that the value, $375, at which the stock was appraised, and the amount paid by Keene therefor, $400, were greatly less than its value, the real market value being not less than $80 per share, and in directing the jury to so find. It is sufficient to say with reference to these assignments that the undisputed evidence established the facts and the court did not err in so stating to the jury.

There was no error in framing the form of the verdict and of the answers to the questions, as was done by the court, for the information and convenience of the jury. This in no way controlled or tended to influence their findings upon the issues presented to them, and was an entirely proper procedure.

The matter of taxation of costs was in the discretion of the court. It was no abuse of this discretion to tax all of the costs against the three defendants jointly.

The court did not render judgment for the value of the stock, as complained of in the fourteenth assignment of error, but merely found the value thereof, and the amount of the devastavit of the administrators, certifying the decree to the Probate Court for observance. Nor did the court render a money judgment against any of the defendants for any sum (except the costs) as set out in the fifteenth assignment, which is overruled.

By the sixth and seventh questions propounded to the jury they were asked whether the two administrators, respectively, knew or by the use of ordinary diligence could have known, before the sale of the stock that it was of greater value than $400. To this question the jury by their verdict answered, "Yes." In copying the verdict into the judgment this answer by mistake is written "No." Appellants assail the judgment for this error. The mistake was clearly a mere clerical one, and would have been corrected if called to the attention of the trial court. Appellants insist that this was done in the motion for a new trial, referring to the eighteenth paragraph thereof which is as follows: "Because the judgment is contrary to the verdict of the jury and is not supported by nor in accordance with the same." This did not point out the error complained of in the assignment, and evidently was not so understood by the court.

It is assigned as error that one of the jurors became sick and was excused and thereupon the parties agreed to try with eleven jurors. When the jury reached an agreement they were instructed by the court that it would be necessary for all of them to sign the verdict. It then

developed that one of them could not sign his name. The judge of the court then wrote the juror's name at the foot of the verdict and he made his mark. This statement from the assignment of error finds no support in the record. We are referred in the brief only to the verdict which shows that it is signed by eleven jurymen and that one of them signed by his mark, and to the motion for a new trial, in which the facts stated are set out. There is nothing in the record to show that this action, or any part of it, was objected to and the ruling upon such objections made the ground of a bill of exceptions. If the point were properly presented, however, we would hold that the action of the court was entirely unobjectionable. The juror having been accepted, any objection on the ground that he did not possess the requisite qualifications comes too late after the verdict. (Schuster v. LaLonde, 57 Texas, 28.)

The appellants made no exception to the petition on the ground that Keene was not a necessary or proper party, as set out in the eighteenth assignment of error, which is without merit.

We have passed upon all of the assignments of error with few exceptions, although none of them are so presented as to require us to do so. No attention is paid to the rules of court in the preparation of the brief.

There is no error presented in the record and the judgment is affirmed.

*Affirmed.*