## UNDERWOOD TYPEWRITER CO. v. SHOULDIS et al. (No. 8310.)

(Court of Civil Appeals of Texas. Galveston. April 20, 1923. Rehearing Dismissed on Appellant's Motion June 6, 1923.)

1. **Appeal and error** ⬅═500(2)—**Exceptions not shown by record to have been called to trial court's attention or acted upon waived.**

Where the record fails to show that exceptions to plaintiff's petition were ever called to the trial court's attention or that it ever acted thereon, such exceptions are deemed to have been waived and present nothing for review.

2. **Appeal and error** ⬅═1068(1)—**Erroneous instruction on ratification harmless where finding that agent's act was authorized was supported by evidence.**

In an action against a corporation for malicious prosecution, error in instructing the jury as to the ratification by a principal of unauthorized acts of its agent not repudiated within a reasonable time, in that such instruction omitted the prerequisite of the principal knowledge, *held* harmless, in view of the jury's finding, supported by evidence, that defendant's manager was acting within the scope of his authority in causing the complaint to be filed against plaintiff on which the action for malicious prosecution was brought.

3. **Malicious prosecution** ⬅═64(1)—**Evidence held to show agent's authority to file criminal complaint.**

In an action for malicious prosecution, evidence *held* sufficient to warrant a finding that the local manager of defendant typewriter company acted within the scope of his authority in causing a complaint of theft to be made against plaintiff who had purchased a typewriter.

---

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Malicious prosecution ⊝⟶72(4)—Instruction on liability for use of criminal process to enforce civil rights held to require finding of malice.**

In an action against a corporation for malicious prosecution on a charge of theft of a typewriter, an instruction as to the liability of the corporation which invokes the aid of criminal process to decide the question of property or other civil rights, which in effect expressly directed the jury that it must appear that defendant knew that the plaintiff was not guilty and acted merely to obtain possession of the typewriter, *held* not erroneous as ignoring the elements of malice and want of probable cause.

**5. Corporations ⊝⟶493—Corporation not immune from liability for malicious prosecution.**

Where a corporation engaged in the manufacture and sale of typewriters through its local manager in charge of its business affairs within a specified territory caused the arrest and prosecution of plaintiff on the charge of theft of a typewriter which she had purchased on the installment plan, such corporation could not contend that it was not liable for malicious prosecution on the ground that it had no authority to invoke criminal process nor on the ground that a resolution of its board of directors was necessary to bind it for responsibility in doing so.

**6. Malicious prosecution ⊝⟶71(1)—Agent's authority to institute criminal proceeding held question for jury.**

In an action for malicious prosecution, evidence *held* to make for the jury a question whether the act of defendant's local manager in causing criminal complaint to be made against plaintiff for theft of a typewriter was within the scope of his authority.

**7. Malicious prosecution ⊝⟶72(1)—Instruction as to elements of contract held not error.**

In an action for malicious prosecution on a charge of theft of a typewriter which plaintiff had purchased on the installment plan, an instruction defining a contract and enumerating its various elements was not error, in view of testimony as to the agreement for the purchase of such typewriter.

**8. Appeal and error ⊝⟶882(14)—Appellant cannot complain of error in procedure invited.**

Appellant cannot contend that there was error in submitting the cause with special issues on certain charges requested by the respective parties, some of which might have had the effect of nullifying the special issues, where appellant first offended in this respect by requesting instructions and thus invited and induced the error complained of.

**9. Evidence ⊝⟶471(24), 473—Testimony that plaintiff was compelled to vacate apartment by reason of prosecution admissible.**

In an action for malicious prosecution, testimony by plaintiff that she was forced to vacate her apartment as a result of her arrest on the charge of theft was not inadmissible as a mere conclusion, but, if a conclusion only, where it was an inevitable deduction from other testimony received without objection, it was unobjectionable.

**10. Witnesses ⊝⟶340(3)—Evidence as to want of chastity inadmissible to impeach credibility of witness.**

In an action for malicious prosecution resulting from plaintiff's arrest and prosecution for the theft of a typewriter after having purchased it on the installment plan, evidence tending to show that plaintiff had followed the life of a public prostitute was not admissible to impeach her credibility as a witness.

**11. Malicious prosecution ⊝⟶64(2)—Evidence held to show want of probable cause, malice, and damage.**

In an action for malicious prosecution, evidence that the local manager of a typewriter company directed the filing of a complaint against plaintiff for the theft of a typewriter purchased by her on the installment plan, under the circumstances, *held* sufficient to support the jury's answers in plaintiffs' favor to the special issues finding a want of probable cause, the existence of malice, and damage to have amounted to the sum claimed.

**12. Malicious prosecution ⊝⟶30—Malice inferred from motive.**

Where a typewriter company, through its local manager, preferred the criminal charge of theft against one who had purchased a typewriter on the installment plan, not in good faith, under a well-founded belief of the plaintiff's guilt, but without having reasonable grounds for doing so, instituted the prosecution for the purpose of recovering possession, it acted from an improper motive, and in a legal sense maliciously.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by Dorothy Underhill Shouldis and another against the Underwood Typewriter Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Aubrey Fuller and Leo C. Brady, both of Galveston, for appellant.

Geo. P. Prendergast and L. M. Kenyon, both of Galveston, for appellees.

GRAVES, J. The appellee, Mrs. Shouldis, joined by her husband, sued appellant, the Underwood Typewriter Company, a corporation, for damages for malicious prosecution, alleging that it, acting through its agents and manager, maliciously and without probable cause, had a criminal complaint filed against her for felony theft, knowing at the time she was not guilty, and that its purpose was to recover a typewriter leased by the corporation to Ray Dovell, which was in her possession.

She further charged that as a result of the filing of the complaint she was arrested and taken to the police station at Galveston, but that subsequently at an examining trial held there before the justice of the peace, at

which the agents and manager of appellant appeared and prosecuted her, the complaint against her was dismissed.

She averred also that as a result of the filing and prosecution of this complaint she was greatly humiliated, injured, and embarrassed, to her damage in the sum of $2,500.

The typewriter company answered by general demurrer, special exceptions, and further specially set up that the typewriter was rented to the plaintiff under a written contract signed by her, the substance of which was that she was to pay monthly rental in advance on the machine, and would not remove it from the place in which she was then living without the consent of the company; that at the expiration of the month for which the rental had been paid, it endeavored to locate the typewriter and the plaintiff, but learned that she had removed it; that it then tried for several days to locate both the plaintiff and the typewriter, but that she evaded the employees of the company who attempted to so do; that a delivery boy in the employ of the company then went to the police station in the city of Galveston, there related the circumstances as thus alleged to the chief of detectives in the presence of the assistant county attorney of the county, and was advised by them to and did file the complaint in question; that neither this boy nor any one else was authorized by the company to file the complaint, nor did it do so itself; that it neither ratified nor confirmed the boy's act in filing the complaint; and that no one acting within the scope of his authority for it took such procedure, nor was the same done with malice upon the part of any one acting within the scope of his authority for the typewriter company.

Both at the close of plaintiffs' evidence and the conclusion of the evidence for both parties, the appellant asked a peremptory instruction in its favor, which each time was refused, and the cause was submitted by the court to a jury, following definitions of malice and probable cause, upon four special issues of fact as well as under a number of requested charges by the parties. The special issues and the answers thereto were as follows:

"Special Issue No. 1. Was or was not the defendant acting maliciously in causing the arrest of plaintiff? Answer: 'It was.'

"Special Issue No. 2. Did or did not the defendant have probable cause to file the complaint against plaintiff? Answer: 'It did not.'

"Special Issue No. 3. Was or was not H. E. Jockey acting within the scope of his authority in causing the arrest of plaintiff? Answer: 'He was.'

"If you have answered special issue Nos. 1 and 3 in the affirmative, that is, 'Yes,' and have also answered special issue No. 2 in the negative, that is, 'No,' but not otherwise, then you will answer—

"Special Issue No. 4. What amount of damages, if any, did the plaintiff sustain by reason of said prosecution? Answer: '$2,500.-00.'"

The special charges referred to, with the indications noted thereon as to whom they were requested by were these:

"Plaintiff's Requested Charge No. 2. 'You are instructed that failure on part of the principal to repudiate the acts of its agent within a reasonable time after such act or acts is committed is ratification by the principal of the acts of the agent.'

"Plaintiff's Requested Charge No. 3. 'You are instructed as follows: That no one can lawfully invoke the aid of criminal process of the land to merely have decided a question of property, or other civil right; and if you find from the evidence that defendant, through its agents, servants, and employees, knew that the plaintiff, Dorothy Underhill Shouldis, did not steal said typewriter, but that defendant's object in instigating such prosecution was to obtain the possession of said typewriter, then said defendant is liable to damages.'

"Plaintiff's Requested Charge No. 4. 'You are instructed that the evidence which has been submitted in this case upon the question of the general reputation of the plaintiff was admitted only for the purpose of mitigation of the damages, if any, found by your verdict.'

"Plaintiff's Requested Charge No. 5. 'You are instructed as follows: That the necessary elements of a contract are as follows:

"'(1) That there must be an agreement directly contemplating and resulting in an obligation, and the agreement must be enforceable in law, therefor:

"'(a) There must be a distinct communication by the parties to one another of their intention.

"'(b) The agreement must possess the marks which the law requires in order that it may effect the legal relations of the parties, and be an act in law, and it must be in form and that there must be a consideration.

"'(c) That the parties must be capable in law of making a valid contract.

"'(d) That the consent expressed in the offer and acceptance must be genuine.

"'(e) That the object of same must be legal.'

"Defendant's Requested Charge No. 1. 'It is immaterial whether Miss Underhill was guilty or innocent of the charge of theft. If you believe the plaintiff innocent of the crime, but believe the defendant had reasonable grounds of suspicion supported by circumstances sufficiently strong in themselves to warrant a prudent man in the belief that the plaintiff was guilty of the offense, you will find for the defendant.'

"Defendant's Requested Charge No. 2. 'You are instructed by the court at the request of the defendant that the fact of plaintiff's acquittal upon the charge complained of cannot be considered by you for the purpose of showing that the prosecution in said cause ended in plaintiff's favor.'

"Defendant's Requested Charge No. 3. 'Any person having possession of personal property of another by virtue of a contract of hiring or

borrowing, or other bailment, who shall, without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as prescribed in the Penal Code for theft of like property.

" 'If you find from the evidence that plaintiff, Dorothy Underhill Shouldis, converted said typewriter to her own use with intent to deprive the Underwood Typewriter Company of the same, or if you believe that the defendant had reasonable grounds to believe and such grounds as would warrant a prudent person to believe that the said Dorothy Underhill Shouldis had converted said property to her own use with the intent to deprive the Underwood Typewriter Company of its use and value, then you will find for the defendant."

On the return of the jury's quoted answer to the special issues, judgment for the plaintiff followed, and the typewriter company has appealed.

[1] Appellant's first complaint here is of the overruling of certain exceptions it filed to paragraphs 2, 3, and 4 of the petition of the plaintiff below. The record before us, however, neither shows that these exceptions were ever called to the trial court's attention, nor that it ever acted thereon. Accordingly, there is nothing for this court to consider in reference to them, as they will be deemed to have been waived. Denison & S. Ry. Co. v. Powell, 35 Tex. Civ. App. 454, 80 S. W. 1054; Moore v. Woodson, 44 Tex. Civ. App. 503, 99 S. W. 116; H. E. & W. T. Ry. Co. v. Waltman (Tex. Civ. App.) 132 S. W. 518; Texas Auto Supply Co. v. Magnolia Petroleum Co. (Tex. Civ. App.) 211 S. W. 629; Lipscomb v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228.

The next presentment through a number of assignments and propositions for a reversal is that the court's charge and its submission of the special issues constituted prejudicial error against appellant in several particulars, among them: (1) The instruction that "failure of the principal to repudiate the act of its agent within a reasonable time after the act is committed is ratification" does not correctly state the law as applicable here, in that there was neither a requirement that knowledge of the alleged malicious act of the agent must be brought home to the principal, nor was the burden of so showing, which rested upon the plaintiff, met under the facts in this instance; (2) there was no evidence either that the agent in filing the complaint acted within the scope of his authority, or that his act in filing it came to the knowledge of appellant; (3) the charge that the defendant corporation was liable if the jury believed that an agent for it resorted to criminal process to regain possession of its property was erroneous, because it ignored the essential elements of an action for malicious prosecution, that is, malice and probable cause, and appellant could not be held unless the agent was clothed with authority to so act, or unless his principal with knowledge of such act on his part ratified the same, nor, in any event, and whatever the motive of the agent, unless there was an absence of probable cause for what he did; (4) the instruction with reference to the elements of a contract was erroneous and harmful, because appellant's liability in no wise depended upon whether a contract existed between the parties, and though upon an immaterial matter, it yet led the jury to believe that unless all the elements of a contract were shown to be present between appellant and the appellee in the renting of the typewriter, appellant would be liable; (5) the submission of special issue No. 3 was unjustified, because the evidence failed to show that H. E. Jockey filed the complaint, had authority either to file or cause one to be filed, or that appellant ratified anything he may have done concerning the filing of it; (6) the effect of the special charges, although the cause is in form, submitted on special issues, is to carve out of the testimony certain matters and direct the jury if they find these to be true to find for the plaintiff—thereby rendering consideration of the special issues superfluous and calling for a general verdict.

Rulings upon the admission and rejection of testimony are next challenged as follows:

(a) "It was error for the court to permit the plaintiff to testify in her direct examination, over the objection of the defendant, that as a result of her arrest she was forced to vacate her apartment, because said testimony was a mere conclusion of the plaintiff and was highly prejudicial to the defendant."

(b) "The plaintiff having put her reputation in issue by her pleadings and evidence. it was error for the court not to permit the defendant, on cross-examination of plaintiff, to show that plaintiff had followed both before and after the filing of the complaint the life of a prostitute, for the reason that the same was material both on the issue of probable cause and on the question of the mitigation of damages, and also went to the credibility of the witness and was legitimate cross-examination."

Further contentions are that appellant's requested peremptory instruction should have been given on the ground that the uncontroverted testimony showed both that probable cause for the filing of the complaint existed and that appellant was neither actuated by malice nor did circumstances obtain from which it might have been inferred.

Lastly, it is said the verdict and judgment should be set aside, because the jury's answers to the special issues are wholly unsupported by the evidence, and it is apparent that, in awarding a recovery for the full amount asked by the plaintiff in the suit, they were actuated by improper motives.

In disposing of the additional questions thus suggested, we shall to some extent at least endeavor to follow the lead of appellant in this order of their presentment.

[2, 3] The criticism of plaintiff's requested charge No. 2, when it is considered as standing alone, is just; the instruction did not go far enough in that it failed to include the necessary element of knowledge on the principal's part of the act of the agent as a prerequisite to ratification; ratification presupposes knowledge; but we think this error becomes immaterial and harmless in view of the finding of the jury, on what we deem to be sufficient evidence, that appellant's manager, H. E. Jockey, was acting within the scope of his authority for it in causing the complaint to be filed. The appellee's recovery, therefore, did not depend in any sense upon the matter of ratification so injected into the case, and hence no harm in the court's charge relating to it could be said to have caused an improper judgment. Rule 62A (149 S. W. x). As just indicated, the claim that there was no evidence that Mr. Jockey acted within the scope of his authority in causing the complaint to be filed cannot be upheld. He himself testified:

"My name is H. E. Jockey, and I now live in Oklahoma City. I am in the employment of the Underwood Typewriter Company. I was employed by the Underwood Typewriter Company in February, 1921, as manager and salesman of the Galveston territory. As their manager I rented out. typewriters, sold them, and repaired them.

"That is the order on the typewriter. That typewriter was delivered by my man at my suggestion and was delivered on February 22d, the rent being paid in advance for one month.

"I have been with the Underwood Typewriter Company for 21 years, but not all of the time as manager. I have been manager less than 2 years. I instructed Mr. De Bona to file this complaint against the plaintiff, and as I have stated in answer to a previous question, I had never before had occasion to file a complaint against a person; never had any trouble getting typewriters before. I have never brought a civil suit, either as employee or manager for the Underwood Typewriter Company, for possession of a typewriter. This typewriter went into the possession of Mrs. Shouldis with my consent, and at the time I instructed Mr. De Bona to file this complaint I knew that she had gotten it with my consent. She didn't request me to have this typewriter sent to her. The only person that did request it was Mr. Dovell, and he paid the rent on it. I appeared in the justice court and testified against this lady. At that time I was the manager of the Underwood Typewriter Company in Galveston, and at that time I knew that we had delivered this typewriter to her."

C. J. De Bona, a witness for the defendant, testified as follows:

"Mr. Jockey is in charge of the branch office, the manager of this branch, and was at the time I filed that complaint. The chief of detectives told me to file that complaint, and Mr. Jockey, the manager of the. Underwood Typewriter Company at that time.

"Before filing this complaint, I asked Mr. Jockey whether to file it—I told him, and he told me to file it."

A. R. Smith, a witness produced on behalf of the defendant, testified:

"At the time I appeared in the justice court, I was working for the Underwood Typewriter Company. I think it was Mr. Brady told me to be at court. No one else told me, except Mr. Jockey. At that time Mr. Jockey was the manager of the Underwood Typewriter Company in Galveston, and I was down there with Mr. Jockey. Mr. Jockey testified in that case, and so did I."

The testimony quoted in our opinion not only raised the issue, but justified the jury's finding as to Mr. Jockey's authority.

[4] Appellant's objections to the charge relating to the use of criminal process to enforce a civil right rest upon a misinterpretation of it. It does not ignore the essential elements of malice and a want of probable cause, as is urged, but in effect expressly directs the jury that it must appear that the defendant at the time the complaint was filed knew that the plaintiff was not guilty and acted merely to obtain possession of the typewriter. This precise charge was approved by our Supreme Court in Gabel v. Weisensee, 49 Tex. 131, and we think embodies the law on the subject. See, also, Sebastian v. Cheney, 86 Tex. 497, 25 S. W. 691.

[5] It is not either always outside of the powers and privileges of a corporation to have criminal offenders prosecuted, nor does it take a resolution of its board of directors to bind it in responsibility for doing so; one of the legitimate objects of its creation is the acquirement of the necessary property for its operations, and the same law available to natural persons in such circumstances likewise confers upon it the right to protect that property by every lawful means, including the institution of criminal proceedings against those who infringe that right. Ry. Co. v. James, 73 Tex. 12, 10 S. W. at pages 748, 749, 15 Am. St. Rep. 743; Ricord v. R. R. Co., 15 Nev. 176. Here, as in the James Case, cited, the evidence indicates that the entire interest and business affairs of the typewriter company for the Galveston territory were under the control and direction of Mr. Jockey as its manager there. He personally directed the filing of this complaint, prosecuted it afterwards in the court, and saw to it that another of his subemployees for the company, the witness Smith, was also in court to testify in its behalf.

[6] As before stated, we think the matter of whether the institution of this prosecution was within the legitimate scope of Mr. Jockey's powers and authority as such Galveston manager for appellant was clearly one for

the determination of the jury, and that the finding that it was had sufficient support in the testimony. It cannot therefore be disturbed by this court.

[7] The giving of plaintiff's requested charge No. 5 about the elements of a contract did not, we think, in the circumstances of the case, present any error of which appellant is entitled to complain. It had pleaded a written agreement between itself and the plaintiff with regard to the renting of the typewriter, which she in turn in her pleadings denied having executed as such, alleging that she had considered it only a receipt to Mr. Dovell for the machine and had signed it with that understanding; an instruction therefore as to what constituted a legal contract would not seem to have been irrelevant. In any event, however, we see no reason for concluding that it probably had any injurious effect upon the right of the appellant.

[8] Appellant's objection now that the cause was submitted, along with the special issues, on certain charges requested by both parties, some of which might have had the effect of nullifying the special issues, comes too late. It first offended in this respect by presenting to the trial court its above-quoted requested charges Nos. 1 and 3. The appellee then followed suit by requesting the charges shown to have been offered by her. Whatever error there was in this procedure was invited and induced by appellant, and it is left in no position to complain here on account of it.

The two challenged rulings affecting the testimony offered come next. That under which the plaintiff was permitted to state that she was forced to vacate her apartment as a result of her arrest is said to have injured appellant because a mere conclusion of the witness was thereby considered by the jury.

[9] We do not regard it as a mere conclusion—rather as a fact which she was shown to be in position to know. But whether that view is correct or not, if it could be said to be a conclusion only, then it was an inevitable one from what she had already testified to without objection, that is, the specific effects and consequences following the filing of the charge, and so it was unobjectionable. Ry. Co. v. Sage (Tex. Civ. App.) 80 S. W. 1038; Ry. Co. v. Gilcrease (Tex. Civ. App.) 187 S. W. 714.

The refusal of the court to permit the interrogation of the plaintiff on cross-examination as to whether or not she had followed the life of a prostitute presents a question not entirely clear of difficulty. The predicate upon which appellant rests its claimed right to have had her answers before the jury, however, is not well laid; its proposition is that, since she herself had both by her pleadings and evidence put her character and reputation in issue, it was competent for it to show on cross-examination that she had followed that kind of life before as well as after the filing of the complaint here involved. But such is not the case. In neither pleading nor proof had she tendered any issue as to her reputation, in both merely assuming what in such circumstances the presumption of the law gave her anyway—that her reputation was good, that she had something susceptible of being injured by being subjected to a charge of felony theft—and then simply alleging the damage to that reputation by the filing of a malicious and false complaint.

[10] As we read the bill of exceptions reflecting this feature of the trial, the court did not exclude any testimony as to her moral character previous to the time she filed this suit, but only inquiries as to what it had been subsequent thereto, and was at the time of the trial; nor does the bill show what the answers to these would have been. In other words, the only questions even excluded were those which, either jointly with other details or exclusively, sought to elicit what had been her mode of life in respect to chastity subsequent to her arrest on this charge of theft; indeed, the sole one shown to have been read to the jury only inquired as to her conduct in that regard within the two weeks immediately preceding the trial. This also being true, and the court having explicitly told the jury they might consider the evidence that had been admitted touching the plaintiff's general reputation—and there was much of it—only for the purpose of mitigation of the damages, the only remaining ground on which it could be claimed that evidence touching her chastity (or lack of it) subsequent to the arrest for theft she complained of, was admissible, is that it went to her credibility as a witness at this trial. We do not think it was admissible for that purpose; as we understand the rule on this subject, it is thus stated in 22 Corpus Juris, at page 474:

"Evidence as to character is properly rejected as irrelevant where the existence or nonexistence of the particular trait proposed to be shown would have no tendency to render probable or improbable the particular act in controversy."

And in the further observation on page 475:

"Chastity may be shown in proceedings involving adultery, indecent assault, or rape, but is irrelevant in a homicide case."

That principle has been applied in the Texas cases of Mullinax v. Pyron, 58 Tex. Civ. App. 253, 123 S. W. 1139, and Rankin v. Busby (Tex. Civ. App.) 25 S. W. 678. Nor do we think the two leading cases relied upon by appellant in this connection hold differently. Ry. Co. v. Dean, 98 Tex. 517, 85 S. W. 1135, 70 L. R. A. 943, and Collins v. Clarke, 30 Tex. Civ. App. 341, 72 S. W. 97. In the Dean Case the plaintiff sought

damages for the shame and humiliation caused by her arrest upon a charge carrying an imputation against her chastity, and the court simply held not irrelevant in determining the degree of mental distress so occasioned evidence of her having been often before arrested on similar charges and of her being the keeper of a house of prostitution at the time of the arrest on account of which she sued; the particular trait involved in each instance was the same, and hence the holding but exemplifies the rule we have quoted. The Clarke Case is to the same general effect; there the plaintiff had affirmatively tendered the issue of the good character and reputation of himself and his family, and in his suit in their behalf for damages for humiliation and disgrace occasioned them by an alleged unlawful search of his house, the court held that proof by the defendant that at the time of the search two common prostitutes were living in the house, one of them with the family, was not irrelevant when especially limited to the measure of damages, that is, to the issues so tendered by the plaintiff himself. It is therefore a far cry from those cases to this, where inquiries whose sole objective was to question plaintiff's chastity were baldly advanced as tending to indicate whether or not as a witness then before the court she was telling the truth. Chastity is one trait of character, truthfulness quite another, and since the same constituent qualities of mind and heart do not necessarily inhere in or run common to both, the existence or nonexistence of the one would, in our opinion, have no reasonable tendency to render probable or improbable the possession of the other.

[11] Upon the remaining questions argued, we entertain no doubt as to the correctness of the court's action in declining to give the peremptory instruction in its favor requested by appellant, nor as to the sufficiency of the evidence to support the jury's answers to the special issues finding a want of probable cause, the existence of malice, and the damage to have amounted to the sum sued for.

[12] The undisputed evidence shows that appellant's manager, promptly at the expiration of the 30-day period for which the rental on the typewriter had been paid to it in advance by another person, and without getting in touch with her at all, sent a mere delivery boy or clerk around to a few places where the appellee was thought to have lived, including the address to which it had originally sent the machine on Dovell's order, and and when the boy did not so locate her or the machine, instructed him to file a complaint against her for the theft of it. In these circumstances, the manager's authority to act for his principal in the matter having been sufficiently indicated, the issue as to malice upon appellant's part likewise became one of fact for the jury; and, like any other fact, malice may be inferred from circumstances and need not be proved by direct evidence; indeed, in applying this rule, the authorities go to the extent of holding that, "in a legal sense, any unlawful act done willfully or purposely to the injury of another is, as against that person, malicious"; in other words, if the appellant in this instance did not prefer the criminal charge in good faith under a well-founded belief of the appellee's guilt, but, without having reasonable grounds for doing so, instituted the prosecution for the purpose of thereby procuring possession of the typewriter, it acted from an improper motive, and in a legal sense maliciously. Griffin v. Chubb, 7 Tex. at pages 615, 616, 58 Am. Dec. 85; Gabel v. Weisensee, 49 Tex. 138 et seq.; and authorities therein referred to.

Further discussion is deemed unnecessary; what has been said disposes of the merits of the appeal; all assignments have been overruled, and the judgment ordered affirmed.

Affirmed.