## DANIELS v. STARNES.
### No. 2378.

Court of Civil Appeals of Texas. Beaumont.
June 15, 1933.

Rehearing Denied June 21, 1933.

Adams & McAlister, of Nacogdoches, for appellant.

Denman & Fowler, of Nacogdoches, for appellee.

WALKER, Chief Justice.

In this case, on the 18th day of April, 1931, appellee, Miss Martha Starnes, recovered judgment on the verdict of the jury against appellant, Flem Daniels, for $400 actual damages and $200 exemplary damages, with 6 per cent. interest from the 20th day of April, 1932, for an assault and battery committed upon her person by appellant on or about the 1st day of October, 1931. Appellee sued appellant for $10,000 actual damages for physical pain, mental anguish, and humiliation, and for $5,000 to her restaurant business which she was conducting in the town of

Cushing, Nacogdoches county, Tex., and for $25,000 exemplary damages, all proximately resulting from the alleged assault and battery. No point is made that appellee's petition was not sufficient to support her prayer for damages, nor that appellant's answer was insufficient to support his defenses.

### Opinion.

■ Otto Hall, living in Cherokee county, was a voluntary witness for appellant. As we understand his testimony, he went from Cherokee county to Nacogdoches county for the purpose of being summoned as a witness in this case, and was there summoned. His testimony was to the effect that he had had carnal intercourse with appellee in his boarding house and in her restaurant, and that the day before he gave his testimony she offered him $50 not to appear and testify against her, and he refused the offer. On cross-examination, in answer to the question, "You just came over to testify about this like that," the witness answered, "When they came after me; I came, I guess you would too." Thereupon the court addressed the witness as follows: "Court: Young man, there is just a certain distance you can go; conduct yourself with the proper demeanor while in this court." To this remark by the court appellant reserved the following exception: "We object to the remarks of the court." The remark of the court was not error, but a proper rebuke to this witness for his discourteous and voluntary remark to counsel for appellee, not called for nor provoked by the question asked.

While testifying in her own behalf, appellee, a single woman about thirty-eight years of age, testified that appellant, a man about sixty-four years of age, offered her $10 to have intercourse with him, and that she refused his offer. In rebuttal of this testimony, appellant testified as follows:

"Q. Your name is Flem Daniels? A. Yes, sir.

"Q. How long have you lived in Cushing? A. About—something near thirty years—ever since the town was first started.

"Q. How long have you known the plaintiff, Martha Starnes. A. Well, ever since she has been there—knew of her.

"Q. Mr. Daniels, what business are you engaged in there? A. Well, I have not got anything at present; I was in the lumber business—I had a yard there; and I have been in the sawmill business.

"Q. You heard her testify here? A. Yes sir.

"Q. Did you ever go in her restaurant and offer her ten dollars to have anything to do with her? A. Let me tell you one thing here: I have not been in her restaurant but three different times, about three or four o'clock in the evening to drink a coke. I get my meals at the house, and I went there one time and ate, and a time or so to drink a coke, and Buford Clayton's wife and Mr. Silvan's wife came in and sat down and bought a chili and I paid for their suppers—forty-five cents in all—and I came out; and when I came another time and Mr. Clayton's daughter was in there and had a chili and drank a coke. I have never been in there with over a dollar and a half in my pocket. I have never offered her a dollar in my life, and she is just a straight out liar when she said it."

Thereupon the following additional proceedings were had:

"Denman: We object to that.

"Court: Mr. Daniels, you will conduct yourself with that conduct that a gentleman should when he is on the stand.

"McAlister: We object to the remarks of the court, because it is prejudicing his case, and the Court has no right to do that. We except to the ruling of the Court and the remarks of the Court and ask that the jury be discharged, as he has indicated to them the Court's interpretation of this.

"Court: Proceed with the case."

■ The statement of appellant that appellee was "a straight out liar when she said it" was highly improper and was of a nature to subject him to punishment as for contempt. It is the duty of the trial judge to protect litigants and witnesses in his court from personal abuse, and he does not commit error in the orderly discharge of this duty. The remarks of the court were not inflammatory nor prejudicial to appellant, but can be construed only as a lenient discharge of an imperative duty invoked by the remark of appellant.

Issues Nos. 1 and 2, submitted by the court's charge, were as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the defendant, Flem Daniels, did at the time and place alleged by the plaintiff, commit an assault and battery upon her?

"You will answer this issue 'Yes' or 'No' as you find the facts to be.

"In the event that you have answered Special Issue No. 1 'yes,' and in that event only, you will answer

"Special Issue No. 2: What sum of money do you find, if any, from a preponderance of the evidence, if paid now, in your judgment would be a fair, just and reasonable compensation to the plaintiff for the damages she has sustained, if any, by reason of the defendant's committing an assault and battery upon her (if you have found that he did commit an assault and battery upon her)."

This charge was excepted to on the ground that issue No. 1 was not followed by a question "ascertaining from the jury as to whether or not plaintiff sustained any injury by reason of the assault and battery," and issue No.

2 on the ground that it was on the weight of the evidence, in that it assumed that appellee suffered injuries as the result of the assault and battery. These objections are overruled. In fact, the issues submitted by these questions were established as a matter of law by the evidence, and could have been assumed by the court as a basis for his judgment. The facts, briefly summarized, are as follows: Appellee was sitting on the front of her restaurant upon two small Coca-Cola cases when she was assaulted by appellant. The following testimony by him shows that he committed the assault and battery: "Then is when I kicked at her and kicked the box and just pushed her like that a little on the left side. I hit the box and about the time she dodges up here and I sort of hit the back of her head with my right hand."

■ The testimony was without conflict that she suffered physical injury as a result of the assault and battery. It was not error for the court to refuse to submit to the jury the issues established as a matter of law by the uncontradicted testimony nor to assume in his charge the existence of certain facts established by the uncontradicted testimony.

■ The court submitted the following charge and definition of malice, on the issue of exemplary damages:

"You are further instructed that in case you find that an assault and battery was committed with malice, in addition to actual damages, you may go further, and in the exercise of sound discretion, assess such further damages as you may deem just as a punishment for committing said assault and battery with malice.

"The word 'malice,' as used in this charge, means a wrongful act done intentionally without just cause or excuse, or as a result of ill will.

This charge and definition were excepted to by appellant:

"Because the Court does not define the legal and technical phrase 'wrongful act,' 'intentionally without just cause,' 'or as a result of ill will.'

"Because the Court does not define the legal and technical meaning of the following phrases: 'Sound discretion' and 'punishment.'"

As used in this charge, the words challenged by appellant were words of ordinary and simple meaning, and it was not error to refuse to define them. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570.

■ Appellant testified that appellee provoked the assault by calling him a "son of a bitch." On this issue the court gave the following charge: "If you find from a preponderance of the evidence that the plaintiff, at the time and place in question, did call the defendant a 'son of a bitch,' such would not

be a justification for his committing an assault and battery upon her, if you find he did so, but may be considered by you in determining whether or not such assault and battery, if any, was committed with malice."

To this charge appellant reserved the following exception: "Because the Court in next to the last paragraph on the last page of his charge does not properly instruct the jury as to the action and conduct of the plaintiff in provoking the difficulty, as in said paragraph the Court tells the jury that if in truth and fact the defendant was abused and bemeaned by plaintiff, it would not be justification but would only be mitigation, when the law is that if said words were used and the action and conduct provoked the assault, then in this event there could not be any recovery of exemplary damages, as the same would be without malice, and as it is submitted, the jury could use it to the disadvantage of defendant."

The charge, as given, was not subject to appellant's exceptions. The rule is thus stated by 4 Tex. Jur. 989: "While provocation in the form of offensive or exasperating words or conduct cannot be considered as justification for an assault, such circumstances may be considered in mitigation of damages."

■ The following charge was submitted on the issue of appellee's chastity: "The Court has permitted certain testimony to go before you bearing on the reputation of the plaintiff for chastity and virtue and also certain evidence of witnesses as to specific acts of sexual intercourse with the plaintiff. This evidence is permitted to go before you for mitigation of the damages you might assess against the defendant, if any, and not in justification or excuse of the defendant's committing an assault and battery upon the plaintiff, if you have so found that he did, and you will consider said evidence for no other purpose."

To this charge appellant reserved the following exception: "Because the Court erroneously instructed the jury that the acts of unchastity proven on the plaintiff were admitted for the sole and only purpose as mitigating the damages, when as a matter of fact said testimony affected the credibility of the plaintiff as a witness and was offered for that purpose, and the same should not be limited as the Court has done in his charge, paragraph 2, last page of charge."

Appellant erroneously insists that the character of evidence embodied in the charge thus excepted to "affected the credibility of the plaintiff as a witness." On this issue Wigmore on Evidence, vol. 2 (2d Ed.) p. 309, says: "The better opinion and the one usually reached, is that in spite of logic's demands, policy requires that the line be drawn at bad general character, and that no specific quality other than that of veracity be considered."

On authority of Bakeman v. Rose, 18 Wend. (N. Y.) 146, by Wallworth, C., the proposition announced by Wigmore was the common-law rule of evidence on this issue. In the case cited the court said: "You cannot therefore inquire whether the witness has the general reputation of being a thief, prostitute, murderer, forger, adulterer, gambler, swindler, or the like."

Underwood Typewriter Co. v. Shouldis et al. (Tex. Civ. App.) 253 S. W. 935, 940, is directly in point against appellant's proposition. In that case appellee sued appellant for damages for malicious prosecution, and upon the trial inquiry was had as to her general reputation for chastity. As to this testimony the court charged the jury that it could be considered "only for the purpose of mitigation of the damages," being the charge given in this case. Against this charge the very point was made that we are now discussing, that this testimony "went to her credibility as a witness." Answering that contention, Judge Graves, speaking for the Galveston Court of Civil Appeals, said:

"We do not think it was admissible for that purpose; as we understand the rule on this subject, it is thus stated in 22 Corpus Juris, at page 474:

" 'Evidence as to character is properly rejected as irrelevant where the existence or non-existence of the particular trait proposed to be shown would have no tendency to render probable or improbable the particular act in controversy.'

"And in the further observation on page 475:

" 'Chastity may be shown in proceedings involving adultery, indecent assault, or rape, but is irrelevant in a homicide case.'

"That principle has been applied in the Texas cases of Mullinax v. Pyron, 58 Tex. Civ. App. 253, 123 S. W. 1139, and Rankin v. Busby (Tex. Civ. App.) 25 S. W. 678. Nor do we think the two leading cases relied upon by appellant in this connection hold differently. Ry. Co. v. Dean, 98 Tex. 517, 85 S. W. 1135, 70 L. R. A. 943, and Collins v. Clark, 30 Tex. Civ. App. 341, 72 S. W. 97. In the Dean Case the plaintiff sought damages for the shame and humiliation caused by her arrest upon a charge carrying an imputation against her chastity, and the court simply held not irrelevant in determining the degree of mental distress so occasioned evidence of her having been often before arrested on similar charges and of her being the keeper of a house of prostitution at the time of the arrest on account of which she sued; the particular trait involved in each instance was the same, and hence the holding but exemplifies the rule we have quoted. The Clark Case is to the same general effect; there the plaintiff had affirmatively tendered the issue of the good character and reputation of himself and his family, and in his suit in their behalf for damages for humiliation and disgrace occasioned them by an alleged unlawful search of his house, the court held that proof by the defendant that at the time of the search two common prostitutes were living in the house, one of them with the family, was not irrelevant when especially limited to the measure of damages, that is, to the issues so tendered by the plaintiff himself. It is therefore a far cry from those cases to this, where inquiries whose sole objective was to question plaintiff's chastity were baldly advanced as tending to indicate whether or not as a witness then before the court she was telling the truth. Chastity is one trait of character, truthfulness quite another, and since the same constituent qualities of mind and heart do not necessarily inhere in or run common to both, the existence or nonexistence of the one would, in our opinion, have no reasonable tendency to render probable or improbable the possession of the other."

See, also, 40 Cyc. 2605, where the rule is stated, "a valid witness cannot be impeached by an attack upon her character for chastity," supported by City of San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 231.

■ Appellant's seventh assignment of error is as follows: "The court erred in permitting plaintiff's counsel to ask the witness Wilson Hardy if he had not been indicted for selling whiskey after he had already asked him if he had not been indicted for a felony."

Wilson Hardy was a witness for appellant. Counsel for appellee, on cross-examination, asked this witness whether or not he had been indicted for a felony, and following that testimony asked him whether or not he had been indicted for selling whisky. Appellant's exception against this question does not constitute reversible error. The objection was addressed only to the statement by the witness that he had been indicted for selling whisky and was merely, "We object to that." Because the record does not show the objections urged by appellant, if any, and overruled by the court, appellant's bill of exceptions presents nothing for review. "In an unbroken line of decisions, this has been held necessary." Skeeters v. Hodges (Tex. Civ. App.) 270 S. W. 907, 913. Issues Nos. 3 and 4 submitted to the jury were as follows:

"Special Issue No. 3: Do you find from a preponderance of the evidence that the defendant, at the time and place in question, did with malice commit an assault and battery upon the plaintiff. .

"You will answer this issue 'yes' or 'no', as you may find the facts to be.

"In the event you have answered Special Issue No. 3 'yes', and in that event only, you will answer the following Special Issue:

"Special Issue No. 4: What amount of money, in your sound discretion, do you assess against the defendant, if any, as a punish-

ment for his committing said assault and battery upon the plaintiff at the time and place in question, with malice, if you have heretofore found that he did commit said assault and battery with malice.

"You will answer this issue by stating the amount you may assess in dollars and cents, if any."

The following exceptions were reserved to these issues:

"Because the testimony does not warrant the submission of special issue No. 3, in that before this issue could be submitted to the jury it should be ascertained if the same were committed maliciously and without provocation; otherwise, there could be no recovery of the same of punitory or exemplary damages."

"Because special issue No. 4 as submitted is upon the weight of the evidence, and that it presumes that an assault and battery if committed was committed with malice and that plaintiff sustained injuries thereby, and should be punished."

No error was committed by overruling these exceptions. Clearly issue No. 4 was not on the weight of the evidence. It assumed no controverted fact, but left these matters to the jury. The exceptions to issue No. 3 are not based upon correct legal propositions. The issue of "malice" was properly submitted by issue No. 3. "Provocation," as that issue was made by the evidence, was not a defense against exemplary damages, but could be considered by the jury only in mitigation thereof on authority of 4 Tex. Jur. 989, cited supra.

■ The following brief summary of the evidence fully sustains the submission of all issues sent to the jury, and their findings thereon. Mrs. O. J. McCormick, a witness for appellee, testified that, at the time the assault and battery was committed, she was standing in her door about 20 feet from appellee, and further, as follows:

"Q. I want you to begin, in your own words, from the time you first saw Mr. Daniels on the morning of this affair, and tell the whole thing, in your own words; just what you saw and heard between Mr. Daniels and Miss Starnes? A. She was sitting in front of her door, on a little soda water case, and he came up the street, and stopped and stood right over her, and asked her why she didn't sit in a rocking-chair. She said that she wasn't able to buy a rocking-chair and didn't have a rocking-chair; and he says 'You have got enough money to buy a rocking-chair'; and he says 'You are too stingy to buy one.' And she said, 'No, Mr. Daniels, I am not stingy', and he says, 'Yes, you are too damned stingy to buy one'; and he kept on cursing her and went up the street—

"Adams: We object to her saying that he kept on cursing her; let her state what he

said. There is going to be some things develop that a lot of ladies would not want to hear, and we think the Court ought to inform them of this so they may get out if they so desire.

"Court: Perhaps evidence will develop in the trial of this case that you might not want to hear, and if you think it is proper for you to (return) you have that privilege. But if you want to sit and hear this it is your privilege, and the Court is not going to drive you out of the Court room. The witness may confine herself to the exact language.

"Q. Just tell the jury—You say he cursed, but that is not admissible, but tell what he said? A. I don't like to do that.

"Q. You will have to; you are in Court. A. He told her she was 'too damned stingy'; and she says, 'Mr. Daniels, I am not stingy,' and he says, 'Yes, you have more money than anybody in town, and you are too God damned stingy to spend it.' She says, 'I am not too stingy'; and he says, 'I guess you begrudge it'; and he says, 'You are a God damned liar'; and she says, 'Mr. Daniels, you must be crazy,' or 'Are you crazy'; something like that; and he comes on by my husband's place of business, and he was standing in front, and he had to pass in front of the barber shop, and he says, 'Well make it snappy'; my husband owed him for his rent, and his rent had come due that day; and he said, 'Make it snappy; I made it hot for one this morning; and I want my rent'; and he says, 'I am going back down there and kick her off the God damned porch.' Those are the very words he spoke. And he goes down and after he kicks her begins cursing her with the same words.

"Q. Just say what he said? A. He comes down and kicks her and said, 'I will kill you, God damn you, I will ruin you'; and so the little girl that works for her started out the door; and he hollered at her, 'Don't you come out here, God damn you; I will kill you'; and he says, 'I will ruin you; God damn you'; and he hit her back of the head—right back of the ear or neck, and she staggers, and she goes down to Mr. Strickland's place of business, and he went as far as Mr. Strickland's door."

Mrs. Watson Whitaker testified: "She (appellee) was sitting on a little box that you put coca cola bottles in, and sitting over this way. And he just came along and kicked her. And she kind of staggered over. I was standing in my door and thought she was going to fall, but she didn't fall—and she got up and just managed to get to the door, but as she went to the door he lifted his hand above the door, and she couldn't go in there. Mr. Daniels hit her. When he hit her right back of the head with his fist doubled up."

Though appellant attacked the general reputation of appellee for chastity, it is but

fair to her to say that the overwhelming weight of the testimony, as given by many of the responsible citizens of Cushing, where she had lived for about a year, was to the effect that she was a decent, hard-working business woman, that she conducted her restaurant in an orderly manner, and had the friendship and patronage of the citizens of Cushing, and that her general reputation for chastity was beyond reproach.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.